UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) |
|---|---|
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:23CR00595 MTS |
| | ) |
| GARY WILDS, | ) |
| | ) |
| Defendant. | ) |

## GUILTY PLEA

Come now the parties and hereby agree as follows:

### 1. PARTIES

The parties are the defendant, Gary Wilds, represented by defense counsel, John D. Stobbs, Esq. and the United States of America (hereinafter "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA

Pursuant to Rule 11(a)(1), Federal Rules of Criminal Procedure, the defendant will plead guilty to all counts of the Indictment. There is no plea agreement between the parties pursuant to Rule 11(c). The parties understand that the U.S. Sentencing Guidelines Total Offense Level and Criminal History Category analysis will be set forth in the Presentence Investigation Report, but

1

will ultimately be determined by the Court. The parties have no agreements as to the applicable guidelines.

## 3. ELEMENTS

As to Count 1, the defendant admits to knowingly violating Title 18, United States Code, Section 1349, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*First*, that two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit mail fraud and wire fraud, as charged in the indictment, and,

*Second*, that the defendant voluntarily and intentionally joined in the agreement when it was first reached or while it was still in effect; and,

*Third*, that, at the time the defendant joined in agreement, he knew the purpose of the agreement.

As to Counts 2 through 23, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*First*, that the defendant knowingly participated in the scheme to defraud or to obtain money or property by means of false pretenses, representations or promises;

*Second*, that the defendant acted with the intent to defraud; and

*Third*, that for the purpose of carrying out the scheme or attempting to do so, the defendant caused interstate wire communications to take place.

2

As to Counts 24 through 27, the defendant admits to knowingly violating Title 18, United States Code, Section 1028A, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*First*, that the defendant knowingly transferred, possessed, or used, without lawful authority, a means of identification of another person;

*Second*, that the defendant knew that the means of identification the defendant transferred, possessed, or used belonged to another person;

*Third,* that the defendant transferred, possessed, or used the means of identification without lawful authority;

*Fourth,* that the defendant knew that he transferred, possessed, or used the means of identification without lawful authority; and

*Fifth,* that the defendant transferred, possessed, or used the means of identification during and in relation to the crimes of mail fraud and wire fraud.

As to Counts 28 through 33, the defendant admits to knowingly violating Title 18, United States United States Code, Section 1001(a)(2), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, that the defendant knowingly and intentionally made the statement as charged;

*Two*, that statement was false and fraudulent;

*Three*, the statement concerned a material fact; and

*Four*, the statement was made about a matter within the jurisdiction of the United States Environmental Protection Agency; and

*Five*, the defendant knew it was untrue when he made the statement.

3

4. **FACTS**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Gary Wilds ("Wilds") operated a business, Pinnacle Concierge, in the Eastern District of Missouri. Through the business, motor vehicle owners compensated him for assisting them in registering their vehicles with the State of Missouri Department of Revenue ("DOR"). Some of the owners knew that Wilds would use deceptive means to obtain their vehicle registration because (1) their vehicles could not pass the emissions inspections mandated by the Clean Air regulations of the Missouri Department of Natural Resources ("DNR") and the Environmental Protection Agency ("EPA"), (2) the owners had outstanding child support arrearages, or (3) the owners had been barred from registering vehicles by another state agency. Others sought Wilds assistance as a means of bypassing waiting lines at the licensing offices.

To execute his scheme, Wilds recruited employees of motor vehicle contract licensing facilities to fraudulently process the motor vehicle transactions on behalf of himself and his clients. Megan Leone ("Leone") and Ashlyn Graef ("Graef")were employed by various contract licensing offices in Missouri and admitted to being recruited by Wilds to assist him in the execution of his scheme. Wilds paid them no more than $100 in cash or through digital wallet platforms such as Cash App for each fraudulent transaction they processed. Wilds also recruited Michelle Boyer ("Boyer"), another license office employee to fraudulently process motor vehicle registration transactions. Regardless of the owners' motivation in seeking Wilds' assistance, Wilds and the

4

employees used electronic wire transmissions that misrepresented to the DOR that (1) the vehicles they were seeking to register passed emissions and safety inspections, (2) the owners provided evidence of their payment of personal property taxes, and (3) the owners demonstrated motor vehicle insurance coverage or other evidence of financial responsibility.

To evade the Clean Air regulations of the Missouri Department of Natural Resources and the United States Environmental Protection Agency, a department of the executive branch of the United States, Defendant, Graef, and Leone made the following false statements to the Missouri Department of Revenue:

| DATE | OWNER | FALSE REPRESENTATION |
| --- | --- | --- |
| January 24, 2019 | J.O. | VEHICLE WAS EXEMPT FROM EMISSIONS INSPECTION |
| January 24, 2019 | S.S. | VEHICLE WAS EXEMPT FROM EMISSIONS INSPECTION |
| July 7, 2021 | D.L.G.B. | VEHICLE PASSED EMISSIONS INSPECTION |
| March 21, 2022 | J.T. | VEHICLE WAS EXEMPT FROM EMISSIONS INSPECTION |
| March 21, 2022 | W.R. | VEHICLE WAS EXEMPT FROM EMISSIONS INSPECTION |
| March 21, 2022 | C.S. | VEHICLE WAS EXEMPT FROM EMISSIONS INSPECTION |

In addition to seeking exemptions from the Clean Air regulations, Wilds and the employees submitted forged documents that falsely claimed the vehicles were eligible for sales tax exemptions as if the owners operated businesses regulated by the United States Department of Transportation or were leasing their vehicles to federally registered interstate carriers. The false representations

5

of Wilds and the employees were electronically transmitted by interstate wires from the various license offices to the DOR in Jefferson City, Missouri. Accepting the employees' misrepresentations to be true, the DOR mailed fraudulently obtained motor vehicle titles from Jefferson City to Wilds and his clients. Pursuant to the aforementioned scheme, Defendant engaged in the following interstate transmissions of the common carrier tax exemption form ("DOR Form 5095") with Graef, Leone, and Boyer:

| DATE | TRANSMISSION | OWNER |
| --- | --- | --- |
| November 7, 2018 | DOR Form 5095 | A.S. |
| November 20, 2018 | DOR Form 5095 | J.B. (1) |
| March 14, 2019 | DOR Form 5095 | J.P. |
| May 10, 2019 | DOR Form 5095 | W.B. |
| July 23, 2019 | DOR Form 5095 | A.W. |
| March 23, 2021 | DOR Form 5095 | J.B. (2) |
| April 22, 2021 | DOR Form 5095 | B.T. |
| May 18, 2022 | DOR Form 5095 | T.B. |
| September 13, 2022 | DOR Form 5095 | J.L. |
| October 18, 2022 | DOR Form 5095 | M.W. |

The conduct of Wilds and the employees resulted in the fraudulent registration of vehicles in violation of the regulations of the DNR and the EPA as well as the loss of tax revenue to the

State of Missouri and various local municipalities. In addition to the tax losses experienced by the State of Missouri and various local municipalities, individuals who were unwitting participants in the fraud scheme experienced financial losses because Wilds' remitted a fraction of the actual fees to the DOR. As a result of the employees' fraudulent use of the sales tax exemptions, tax assessments were reduced from thousands of dollars to as little as $11. The vehicle owners remain liable for the taxes assessed by the State of Missouri.

As an example of the fraudulent use of the common carrier tax exemption, Wilds and Graef fraudulently registered a 2022 Dodge Ram pickup truck for J.L. on September 13, 2022. After J.L. purchased the vehicle, he sought Wilds' assistance in registering the vehicle. Wilds advised him that $1,350 would satisfy the registration fees and taxes due for the Ram with the State of Missouri. J.L. sent Wilds the payment through Venmo and delivered the documents needed to register the vehicle at Wilds' home. After the vehicle was registered, J.L. collected the license plates and completed registration from Wilds. Wilds, however, only remitted $14.50 to the DOR in the form of an agent fee and titling fee.

Wilds and Graef avoided the payment of sales taxes by submitting a falsely made and forged DOR Form 5095 titled "Sales Tax Exemption Statement for Authorized Common Carriers" ("common carrier tax exemption") to the DOR. The fraudulent document contained the forged signature of J.L. and falsely claimed that the vehicle weighed 24,000 pounds and that J.L. was leasing the vehicle to a company that was legitimately registered as an interstate carrier with the Federal Motor Carrier Safety Administration. In truth and in fact, the vehicle weighed no more than 11,400 pounds, J.L. was using the vehicle for his personal use, and the purported lessor had not authorized use of its name or federal motor carrier number by Wilds or Graef. Wilds and Graef

7

knew that J.L. was not eligible to claim a common carrier tax exemption for his vehicle at the time of the transaction.

In addition to J.L., Defendant used the identities of J.B.(2), B.T., M.W., and others in submitting the fraudulent common carrier tax exemptions to the State of Missouri.

To pay the employees and receive payment from the vehicle owners like J.L., Defendant received and transmitted the following Venmo payments:

| DATE | TRANSMISSION | SENDER | RECIPIENT |
| --- | --- | --- | --- |
| August 1, 2020 | $100 Venmo Payment | Defendant | Graeff |
| October 3, 2020 | $200 Venmo Payment | Defendant | Graeff |
| May 22, 2021 | $70 Venmo payment | Defendant | Graeff |
| May 26, 2021 | $100 Venmo payment | Defendant | Graeff |
| June 10, 2021 | $100 Venmo payment | Defendant | Graeff |
| January 11, 20222 | $400 Venmo payment | Defendant | Graeff |
| September 13, 2022 | $1,350 Venmo Payment | J.L | Defendant |
| September 16, 2022 | $300 Venmo Payment | Defendant | Graeff |

5. **STATUTORY PENALTIES**

The defendant fully understands that the maximum possible penalty provided by law for the crime of conspiring to commit mail fraud and wire fraud to which the defendant is pleading guilty in Count 1 is imprisonment of not more than 20 years, a fine of not more than $250,000.00, or both. The Court may also impose a period of supervised release of not more than 3 years.

8

Defendant also fully understands that the maximum possible penalty provided by law for the crime of wire fraud to which the defendant is pleading guilty in Counts 2 through 23 imprisonment of not more than 20 years, a fine of not more than $250,000.00, or both. The Court may also impose a period of supervised release of not more than 3 years.

In addition, Defendant also understands that the crime of aggravated identity theft to which the defendant is pleading guilty in Counts 24 to 27 is *a mandatory term of imprisonment of 2 years which must be served consecutively with any other term of incarceration imposed for the convictions of conspiracy to commit mail fraud and wire fraud and the substantive offenses of wire fraud and making a false statement*, a fine of not more than $250,000.00, or both. The Court possesses the option to run the counts of aggravated identity theft concurrently or consecutively to one another. The Court may also impose no more than a 1-year period of supervised release.

Finally, Defendant understands that the maximum possible penalty provided by law for the crime of making a false statement to which the defendant is pleading guilty in Counts 28 through 33 imprisonment of not more than 5 years, a fine of not more than $250,000.00, or both. The Court may also impose a period of supervised release of not more than 3 years.

a. **Supervised Release**: Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code,

Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**b.** **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $3,300, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**c.** **Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**d.** **Fines and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the

Court will be due and payable immediately.

## 6. U.S. SENTENCING GUIDELINES 2024 MANUAL

The defendant understands that Counts 1 through 23 and 28 through 33 are affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense. *However, pursuant to § 2B1.6 Application Note 1(a), the offense of aggravated identity theft charged in Counts 24 through 27 bears a mandatory term of imprisonment of 2 years that must be run consecutively to any sentence imposed for Counts 1 through 23 and 28 through 33. Defendant also understands that the Court possesses the discretion to run sentences imposed for Counts 24 through 27 concurrently or consecutively with one another.* The determination of the defendant's Total Offense Level and Criminal History Category shall be left to the Court.

10

Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's offense level or criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

## 7. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS

In pleading guilty, the defendant acknowledges, fully understands and, hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; and the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

11

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

8. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT**

No other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

4/14/2025
Date

TRACY L. BERRY 014753 TN
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102

4-15-25
Date

GARY WILDS
Defendant

4-15-25
Date

JOHN STOBBS
Attorney for Defendant

12